# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiffs, <br><br>v. <br><br>ISSAM HAMADE, <br><br>Defendant. | Criminal No. 15-237(3) (JRT/BRT) <br><br>**MEMORANDUM OPINION AND ORDER** |

David J. MacLaughlin and John Docherty, Assistant United States Attorneys **U.S. ATTORNEY'S OFFICE**, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Bruce D. Nestor, **DELEON & NESTOR, LLC**, 3547 Cedar Avenue South, Minneapolis, MN 55407, for defendant.

This criminal case is before the Court on Defendant Issam Hamade's Motion for Review of the Order of Detention and to Revoke or Amend Order of Detention Pursuant to 18 U.S.C. § 3145(b). (Docket No. 77.)

## I.   INTRODUCTION

The Second Superseding Indictment in this case charges Defendants Usama Hamade, Samir Berro, and Issam Hamade with one count of conspiracy to Violate the International Emergency Economic Powers Act (50 U.S.C. § 1701 *et seq.*) and the International Traffic in Arms Regulations (22 U.S.C. § 2778(c)), all in violation of 18 U.S.C. § 371.  Defendant Usama Hamade has also been charged with aiding and

1

abetting smuggling in violation of 18 U.S.C. §§ 554 and 2(b). The Defendants are alleged to have exported and attempted to export certain commerce-controlled goods suitable for use in un-crewed aerial vehicles ("UAVs" or "drones") including a TRS18 jet engine, without obtaining the required export licenses. The alleged purpose of the conspiracy was to export drone parts and technology from the United States and other countries to Lebanon and specifically to Hizballah, an organization that has been designated a Foreign Terrorist Organization by the State Department since 1997. Defendant Issam Hamade is alleged to have wired $59,000 from Beirut to a South African bank to allow codefendant Samir Berro to illegally transship the jet engine to Hizballah coconspirators in Lebanon. It is further alleged that Defendant made additional wire transfers in the amounts of $14,965 and $99,959 in furtherance of the conspiracy.

Defendant Issam Hamade was arrested in the Republic of South Africa on the conspiracy charge on February 14, 2018. Initially, Defendant opposed extradition and sought bail while in South Africa, but that request was denied. Eventually, Defendant waived extradition and he was transferred to the United States on October 17, 2019.

After Defendant arrived in the District of Minnesota, the United States moved for Defendant's pretrial detention pursuant to 18 U.S.C. § 3142(f)(2)(A), claiming that Defendant poses a serious risk of flight.

A detention hearing was held on October 29, 2019. Following proffers by the United States and Defendant and arguments of counsel, the Magistrate Judge found that,

notwithstanding the presumption of innocence, Defendant should be detained pending trial.

As to risk of flight, the Magistrate Judge determined the United States met its burden of showing by a preponderance of the evidence there is no condition or combination of conditions that would reasonably assure Defendant's presence at future proceedings. (Mot. Hr'g Tr. ("Tr.") at 82, Oct. 29, 2019, Docket No. 59.) In particular, the Magistrate Judge noted that Defendant had no ties to Minnesota but had substantial ties to Lebanon and South Africa. (*Id.*) The Magistrate Judge further found there was probable cause to believe Defendant had committed the alleged offense and that it was undisputed that Hizballah is an enemy of the United States. (*Id.*)

In the Order, the Magistrate Judge found in the alternative there was clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community. (Detention Order at 9, Nov. 7, 2019, Docket No. 66.) This finding was based on the serious charges in the Second Superseding Indictment and the evidence in the record supporting the allegations of Defendant's participation in the charged conspiracy involving the provision of drone parts and technology to a designated terror organization. (*Id.* at 9–10.)

Defendant now moves for review of the Detention Order and requests this Court revoke or amend the Detention Order.

## II. STANDARD FOR DETERMINING PRETRIAL DETENTION

A defendant may be detained pending trial if "after a hearing pursuant to the

provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Detention is appropriate where the United States proves by clear and convincing evidence that a defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that a defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the community or the defendant's appearance at future court proceedings. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (citations omitted).

In making this determination, the Court must take into account the following factors:

(1) The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including–

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community

that would be posed by the person's release.

18 U.S.C. § 3142(g).

Upon a motion to review a detention order, the Court conducts a *de novo* review. *United States v. Maull*, 773 F.2d 1479, 1484–85 (8th Cir. 1985). Based on its *de novo* review, and upon the arguments of counsel, the Court will deny Defendant's motion.

## ANALYSIS

I. **SECTION 3142(G) FACTORS**

    A. **Nature and Circumstances of the Charged Offense**

Defendant is charged in Count 1 of the Indictment with Conspiracy in violation of 18 U.S.C. § 371. The maximum punishment for this crime is five years in prison and/or a fine.

The facts underlying the crime are that defendants are alleged to have provided drone parts and technology to Hizballah—an organization designated a Foreign Terrorist Organization at all times relevant to the Second Superseding Indictment. The designation is pursuant to Section 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189. The government has proffered evidence to show that Defendant supports Hizballah in the form of Facebook posts.

Government Ex. 2 is a post that includes pictures of the World Trade Center burning together with Defendant's comments relating that terror attack to a verse in the Quran: "I

swear this is the strangest piece of information I have come across, and this is the first time I've heard this, praise be to Allah." This post also includes a photo of Hizballah's leader, General Secretary Hassan Nasrallah. (*Id.*) In Government Ex. 3, Defendant refers to Nasrallah as "his soul."

It is Defendant's position that the drone parts that are the subject of the Second Superseding Indictment have a wide variety of uses, including geo-surveying and ground vehicle tracking, and that such technology can be bought by virtually anyone, so long as they do not export or transport it in violation of United States law. Defendant argues the government has made no showing that the parts and technology at issue in the Second Superseding Indictment resulted in any significant or material technological advantage to Hizballah.

Defendant further asserts he does not support Hizballah or Nasrallah. As explained by his brother, Alin Hamade, his family is part of a Shiite sect in Lebanon that is not conservative. (Def. Ex. M (Alin Hamade Aff. ¶ 4).) Alin further asserts that the only reason Defendant may have made a public expression of respect for Nasrallah is because such expressions are required to avoid personal harm or loss of professional status. (*Id.*)

1. **Weight of the Evidence**

The United States' primary witness, Chris Neveling, has reported information to the government describing his business dealings with defendants that involved providing

defendants UAV parts, and that defendants provided him the funds to obtain such parts. (Gov't Ex. 1 (Neveling Aff. ¶ 3).) Neveling reported that Usama Hamade was extremely impatient and somewhat militant about obtaining the drone parts and berated Neveling daily about speeding up his procurement of parts. (*Id.* ¶ 4.) Neveling also reported that defendants supported Hizballah, including that Usama Hamade told Neveling that he and his brother were both members of Hizballah. (*Id.* ¶ 8).) Neveling further reported that he visited Defendant's home in Beirut and that Nasrallah's pictures was hanging on the wall. (Gov't Ex. 4.)

Neveling also recounted an incident in January 2010, when both Usama and Issam Hamade berated Neveling for shipping a jet engine that did not work. (Gov't Ex. 1 ¶ 6.) The government argues that Issam Hamade's anger for procuring a jet engine for Hizballah that did not initially work confirms his intense interest in providing Hizballah with material to promote its hostile military and terroristic agenda. Neveling described a number of death threats made to him by Usama Hamade, but that he was also afraid of Issam because of his belief that the defendants in this case are part of a terrorist organization and that the organization was aware he was cooperating with the United States. (*Id.* ¶ 14.)

Defendant argues there is little, if any, corroborating evidence that financial transfers made by him were made with knowledge of the conspiracy. He further argues there is little, if any, evidence that the ultimate recipient of the drone technology was Hizballah and that the Second Superseding Indictment is outside the statute of limitations

7

for Defendant's alleged involvement in the conspiracy. The limitation period for a criminal conspiracy is five years, which runs from the date of the last overt act. *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir. 1997).

Defendant is not moving to dismiss on statute of limitations grounds at this time but notes that he may raise it as a potential legal defense. Defendant is alleged to have made financial transfers in 2010 and 2011, but he was not indicted until October 11, 2017, more than five years later. Defendant does acknowledge the alleged transfer of the binoculars was on December 3, 2013, but questions whether the government can establish such transfer was part of the prior course of conduct constituting the alleged conspiracy involving this Defendant.

2. **History and Characteristics of Defendant**

Defendant is a citizen of Lebanon and he has no ties to Minnesota. His wife and children live with him in Beirut. Defendant does have one brother, Alin Hamade, who lives in California, but the brothers are estranged. (Def. Ex. M (Alin Hamade Aff. ¶ 3).) Defendant's mother travels frequently between Lebanon and the United States. (Gov't Ex. 6.) Defendant also has family and assets in South Africa, including a business and a home.

Defendant asserts he is an eighteen-year military veteran of the Lebanese Armed Forces (LAF) who retired in 2012 at the rank of Brigadier General. He asserts the LAF has deep military ties to the United States, having received over $2.29 billion in military

assistance since 2005. He has no prior arrests or convictions.

His mother is a citizen of the United States, as is his 11-year-old daughter. Defendant has obtained a visa in the past and has visited the United States. He currently does not have a passport and claims he does not have the financial resources to flee or persons in the United States who would assist him in flight.

Defendant asserts that although he did fight his extradition for 18 months, he ultimately waived extradition. Defendant notes that he was made aware of the charges against him in late 2017, but nonetheless left his home in Lebanon, a country that does not have an extradition treaty with the United States, and traveled to South Africa in February 2018 knowing that South Africa has an extradition treaty with the United States and knowing that he would be arrested.

Defendant further asserts he has already served 20 months, and he is only facing a maximum of five years, thus he does not have much time left to serve if convicted. But because this is a complicated case, Defendant argues he could serve a five-year term even if not convicted if held on pretrial release.

3. **Nature and Seriousness of Danger to Others or the Community**

The evidence proffered by the government shows that Defendant supports Hizballah, a designated foreign terrorist organization. There is no dispute as to the nature of Hizballah and that its interests are antithetical to the interests of the United States. Therefore, anyone who supports Hizballah and provides drone parts and technology to

9

Hizballah presents a danger to the United States.

B. **Serous Flight Risk**

Defendant argues the Magistrate Judge improperly shifted the burden to Defendant to establish that no condition or combination of conditions of release would reasonably assure his appearance at future proceedings. He further argues that to show he is a serious flight risk the government must show he has the means and motive to flee, and that the record does not support such a finding. He asserts he does not have the means to flee; he has no passport or other travel documents or access to money or persons that will help him obtain travel documents. He further claims he does not have the motive to flee and has in fact voluntarily presented himself to fight the charges against him.

Based on the record before it, and after applying the § 3142(g) factors, the Court finds that the preponderance of the evidence demonstrates that Defendant poses a serious risk of flight and that no condition or combination of conditions will reasonably assure his appearance as required.

As noted above, the nature and circumstances of the charged offense involve providing drone parts and technology to a designated foreign terrorist organization, Hizballah. There is also evidence in the record showing that he has publicly praised Hizballah and its leader Hassan Nasrallah.

As to the weight of the evidence, the record includes an affidavit from Chris Neveling, a cooperating witness, who attests to being told that Defendant is a member of

Hizballah, that Defendant was involved in the conspiracy and that Neveling is afraid of Defendant and his brother Usama Hamade.

The history and characteristics of Defendant further support a finding he is a flight risk. Defendant is not a citizen of the United States and has no ties to Minnesota. He has one brother that lives in California, but it is undisputed that Defendant and this brother are estranged. The record demonstrates that his mother and sister frequently travel to the United States, but do not permanently reside in the United States.

On the other hand, Defendant has substantial ties outside of the United States. He is a citizen of Lebanon, his wife and family live with him in Lebanon, and it is undisputed that Lebanon does not have an extradition treaty with the United States. Defendant also has family, business ties, and property in South Africa. These substantial ties clearly support a motive to flee, and if he were to flee to Lebanon, the United States would be unable to extradite him and prosecute him on the charges in this case.

The record also demonstrates that Defendant, as alleged in the Second Superseding Indictment, had access to large sums of money. It is thus conceivable that he may continue to have access to such funds as would be necessary for him to obtain travel documents and flee this country, despite conditions of release such as GPS location monitoring.

Finally, § 3142(g)(4) requires the Court to consider the nature and seriousness of the danger to others that would be posed by Defendant's release. Here, Defendant is

charged with providing drone parts and technology to Hizballah, a designated Foreign Terrorist Organization that is alleged to have used drones in the past to carry out terrorist acts.

Accordingly, the Court finds by a preponderance of the evidence that Defendant poses a serious flight risk and detention is therefore warranted.

### C. Danger to the Community

Defendant also challenges the Magistrate Judge's alternative finding that by clear and convincing evidence there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community. Defendant argues that as the current detention motion was brought pursuant to § 3142(f)(2)(A), which only addresses a serious flight risk, it was error to base the detention order on Defendant's dangerousness. *See United States v. Himler*, 797 F.2d 156, 160 (3rd Cir. 1986) (finding that if case did not involve an offense specified in subsection (f)(1), and no claim defendant would obstruct justice or intimidate a witness, detention is authorized only upon a finding of risk of flight, and any danger defendant may present to the community may be considered only in setting conditions of release); *United States v. Ploof*, 851 F.2d 7, 12 (1st Cir. 1988) (following *Himler*).

This argument has not been adopted by the Eighth Circuit and is inconsistent with the statutory text of § 3142. *See United States v. Holmes*, 438 F.Supp. 2d 1340, 1343 (S.D. Fla. 2005) (finding that by adopting new factors directed to dangerousness "it seems

logical to conclude that Congress intended that the courts actually consider these factors in every instance when a detention hearing properly takes place pursuant to § 3142(f).")   In addition, the cases cited by Defendant are distinguishable, because those cases did not include a finding of serious risk of flight.   Here, the Court has found that Defendant poses a flight risk, therefore detention is warranted regardless of any finding as to dangerousness.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Review the Order of Detention and to Revoke or Amend Order of Detention (Docket. No. 77) is **DENIED.**

DATED: December 27, 2019  
at Minneapolis, Minnesota.

                                                       JOHN R. TUNHEIM  
                                                           Chief Judge  
                                                  United States District Court